UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

JUNIOR ASMAR, D-1,

    Defendant.
_____/

Case No. 18-20668

HON. GEORGE CARAM STEEH

ORDER DENYING DEFENDANT'S MOTION
FOR COMPASSIONATE RELEASE [ECF No. 71]

Defendant Junior Asmar moves the Court for compassionate release from prison due to dangers posed by COVID-19. For the reasons set forth below, Defendant's motion is DENIED.

I. Factual Background

Defendant Junior Asmar pled guilty to conspiring to distribute marijuana and launder money arising from his participation in a conspiracy involving an unlicensed medical marijuana dispensary. The scheme began as early as 2016 and involved growing marijuana in the Detroit Metro Area and using a number of businesses to launder the millions of dollars in proceeds.

Defendant was indicted in 2018, and on May 6, 2019 he was sentenced to a term of 60 months imprisonment, followed by a term of supervised release of four years. Defendant began serving his sentence on June 20, 2019 and has a projected statutory release date of September 21, 2022[1]. He has served approximately 22% of his sentence and approximately 33% of his projected prison term. Defendant is housed at FCI Morgantown in Morgantown, West Virginia.

Defendant is 47 years old and asserts he has medical conditions which place him at a greater risk of contracting and suffering the most severe consequences of COVID-19. Specifically, Defendant describes his health as follows:

> (1) is medically obese; (2) was an everyday cigarette smoker (before he entered prison); (3) has struggled with substance abuse in the past (including the regular smoking of marijuana and the over-consumption of alcohol); (4) is a borderline diabetic (with a Hemoglobin A1C count of between 5.8-6.0, which means that he is at a significantly increased risk of full-blown diabetes); and (5) has fluctuating blood pressure (indicating hypertension), which has been as high as 154/98 and is almost consistently over 135/80 (over the past year).

[ECF No. 71, PageID.983-984]. Defendant asserts that these medical conditions taken in the aggregate, along with his status as a prisoner, put

---

[1] The government avers that defendant's projected release date is September 21, 2023. However, defendant attaches an exhibit which is a screenshot of a BOP webpage that lists defendant's projected release date as September 21, 2022.

- 2 -

him at high risk of falling ill with COVID-19 and having serious medical complications or death if he is infected.

Defendant's medical records show that upon arriving at FCI Morgantown, he declined the influenza and Tdap vaccines [ECF No. 73-3, PageID.1111-1112]. Defendant did not report any notable health concerns during his initial screening with the Bureau of Prisons ("BOP"). He denied having diabetes, cardiovascular problems and hypertension. Defendant did report daily marijuana use and his medical exam recorded his blood pressure as 154/98. Defendant did not report taking any medications [ECF No. 73-5, PageID.1116-1119].

Defendant's November 14, 2019 medical record showed that his BMI was 38.4 which the CDC categorizes as "obese." [ECF No. 73-4, PageID 1114]. The BOP reports that Defendant currently has the following conditions: tinea cruris (jock itch); cannabis use disorder, severe; retinopathy, NOS (eye condition); dermatitis, unspecified (skin inflammation); low back pain; hematuria, unspecified (blood in urine); and prediabetes [ECF No. 73-7, PageID 1124].

On June 10, 2020, Defendant sent a request to the Warden at FCI Morgantown requesting that the BOP file a motion for reduction of sentence under 18 U.S.C. § 3582(c)(1)(A)(I). Defendant's request was

denied by the Warden on July 13, 2020.

At present there have been zero confirmed inmate cases of COVID-19 and one confirmed staff case at FCI Morgantown. Testing is reportedly performed at the facility when inmates are symptomatic. In his request for release, Defendant asks the Court to modify his sentence under such restrictions and conditions as it deems appropriate, including non-custodial release, release on tether, or home confinement.

The BOP has been directed by the Attorney General to assess its entire prison population to determine which inmates face the most risk from COVID-19, pose the least danger to public safety, and can safely be granted home confinement. 03-26-2020 Directive to BOP; 04-03-2020 Directive to BOP. This process necessarily requires the BOP to identify the best candidates for release, ensure that their homes are suitable for home confinement, and arrange a way to quarantine each of them for 14 days. As of August 3, 2020, these directives have resulted in at least 7,282 inmates being placed on home confinement. See BOP COVID-19 Website.

II.     Legal Standard

This Court's authority to grant Defendant's request for compassionate release is governed by 18 U.S.C. § 3582(c)(1)(A), as

amended by the First Step Act of 2018. This section allows for judicial modification of an imposed term of imprisonment when three criteria have been met: (1) the defendant has first exhausted all administrative remedies with the BOP or at least allowed the BOP 30 days to act on his request before seeking compassionate release on their own motion; (2) extraordinary and compelling reasons warrant such a reduction; and (3) the reduction is consistent with the applicable policy statements issued by the Sentencing Commission and the court has considered the factors set forth in section 3553(a). 18 U.S.C. § 3582(c)(1)(A)(i).

An "extraordinary and compelling reason" for the reduction can be satisfied in cases where a defendant's medical conditions or overall state of health are such that they cannot be treated effectively or will worsen in a custodial environment. To qualify, a defendant must have a medical condition, age-related issue, family circumstance, or other reason that satisfies the criteria in USSG § 1B1.13(1)(A) & cmt. n.1, and he must "not [be] a danger to the safety of any other person or to the community," USSG § 1B1.13(2).

Before granting a motion for compassionate release, the Court must review the § 3553(a) factors to the extent that they are applicable and determine whether they support or undermine the sentence reduction.

III.    Analysis

    A.    Exhaustion of Administrative Remedies

Defendant has exhausted his administrative remedies by submitting a request to the Warden on June 10, 2020. The BOP denied the request on July 13, 2020.

    B.    Extraordinary and Compelling Reason

Defendant bases his request for release on his medical conditions including his obesity, being a former smoker, struggling with substance abuse, being a borderline diabetic and having fluctuating high blood pressure. Defendant contends that his medical conditions taken together, along with his status as a prisoner, place him at higher risk of contracting COVID-19 if exposed as well as making him more vulnerable to complications from the virus.

The CDC has found a number of medical conditions place individuals at risk for severe illness from COVID-19—namely, over 65 years of age, serious heart conditions, the immunocompromised, severe obesity (defined as BMI of 40 or higher), diabetes, chronic kidney disease, and liver disease. www.cdc.gov (People Who Are at Higher Risk for Severe Illness). Asmar's medical records confirm that he is obese (though not severely ovese), with a BMI of 38.4, which the CDC has identified as a risk factor for

- 6 -

COVID-19.  And, while not a diabetic, he has also been diagnosed as having prediabetes.  Given the heightened risk that COVID-19 poses to someone with obesity and diabetes, Asmar has satisfied the eligibility threshold that he has a medical condition that would qualify him for compassionate release during the pandemic.

However, under Section 1B1.13, the Court must perform an individualized assessment, as an individual defendant's relative risk varies widely.  *See United States v. Austin*, No. 15-20609, 2020 WL 2507622, at *4–*5 (E.D. Mich. May 15, 2020).  Relevant considerations include the precautions at the prison, the number of COVID-19 cases there, whether and how much that number might increase or decrease, the prison's medical facilities, the defendant's release plan, the threat from COVID-19 in his release location, his access to medical care if released, and his willingness to abide by release restrictions and social-distancing protocols.  *See id.*

FCI Morgantown has zero confirmed inmate and one confirmed staff COVID-19 cases, though the Court acknowledges that there may be undiagnosed cases due to the lag time involved in obtaining test results and that fact that asymptomatic individuals are not currently being tested.  The Court also notes that according to Defendant's prison medical records,

he declined the influenza and Tdap vaccines after arriving at Morgantown. The government offers this information to support their argument that Defendant will not take appropriate measures to protect himself from contracting COVID-19 even if he is released.

Finally, section 1B1.13(2) only permits release if a "defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)."  It thus prohibits the release of dangerous offenders, including many drug dealers, even without any indication that they engaged in violence.  *See United States v. Stone*, 608 F.3d 939, 947–48 & n.6 (6th Cir. 2010).

Defendant cites to a number of recent cases granting compassionate release [ECF No. 71; PageID. 979-983].  However, those cases can all be distinguished on the basis that the defendants have more serious health conditions, they served a greater percentage of their sentence, they faced a greater risk of infection due to the circumstances at their institution, and/or they were found not to be a danger to their community.  See *United States v. Jermaine Readus*,  No. 16-20827, 2020 WL 2572280 (E.D. Mich. May 21, 2020); Lanel Loyd v. United States, No.  15-20394, 2020 WL 2572275 (E.D. Mich. May 21, 2020); *United States v. Joshua Elisha-Duwane White*, No. 13-20653, 2020 WL 2557077 (E.D. Mich. May 20,

2020); *United States v. Walid Jamil*, No. 15-00264, 2020 WL 2614877 (N.D. Cal. May 21, 2020); *United States v. Rodriguez*, No. 03-cr-00271, 2020 WL 1627331 (E.D. Pa. Apr. 1, 2020).

After giving due consideration to of all of the relevant factors in this case, the Court concludes that there is not an extraordinary and compelling reason to modify Defendant's sentence under 18 U.S.C. § 3582(c)(1)(A)(i).

C. 18 U.S.C. § 3553(a) Factors

Even if Defendant presented an extraordinary and compelling reason for the Court to modify his sentence, the § 3553(a) factors, including his history and characteristics, seriousness of the offense, promoting respect for the law, and providing just punishment weigh in favor of denying his request for compassionate release.

Defendant was convicted of nonviolent counts that involved the sale of medical marijuana through an unlicensed dispensary he was associated with, along with the laundering of monetary instruments. While this case did not feature any allegations of violence or firearms use/possession, Defendant does have a prior criminal record. Defendant pled guilty in 1994 and 2001 to separate felony drug charges. Furthermore, in 2002 he was convicted of aggravated assault. Defendant's prior drug and assault convictions did not deter him from participating in a multi-million-dollar

marijuana trafficking business.

Defendant has served 22% of the original sentence imposed by this Court. *See United States v. Kincaid*, No. 19-6271, 2020 WL 2521303, at *1 (6th Cir. May 18, 2020) (noting that it was not even "a close question" that a district court properly denied compassionate release on the basis that the defendant "had served only a fraction of her sentence," there roughly 15%). As the Court observed during the initial sentencing hearing of a co-defendant, this was a "significant operation" that "deserves a heavy sentence." [ECF No. 55: Tr., 644-45]. Ultimately, the Court finds that such a drastic reduction of Defendant's sentence would not deter him from future criminal behavior.

For the reasons outlined above, Defendant's motion for compassionate release is DENIED.

Dated: August 7, 2020

                                        s/George Caram Steeh
                                        GEORGE CARAM STEEH
                                        UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on August 7, 2020, by electronic and/or ordinary mail.

s/Brianna Sauve
Deputy Clerk